and the New York Community Bancorp 236971. Good morning. Good morning, Your Honors. May it please the Court, my name is Gail Pollack from Morrison-Cohen, and I am here on behalf of Appellants Gene Schaefer and Louis Bermeo. Your Honors, in finding for New York Community Bank and holding that appellants did not have a reasonable belief that they were reporting a bank fraud, the ALJ stated, Complainants no doubt could have reasonably believed that they exposed unethical behavior or project mismanagement given their account of events, but that conduct does not relate in any meaningful way to bank fraud. Now this legal conclusion, Your Honors, is the rub of this appeal. Can a scheme in which vendors provide inflated bids, take bank property, and pay kickbacks to bank personnel constitute bank fraud under the whistleblower protections of the Serbians-Oxley Act? We submit that both the ALJ and the ARB misunderstood this issue and that their misunderstanding then undergirded their findings that appellants did not have an objectively or subjectively reasonable belief that they were reporting bank fraud. It strikes me that there were a number of different sort of potentially dispositive holdings coming out of the ARB, and on the objective prong, as I read the decision, one of them was what you just described, which is that given the theory that Mr. Schaffer had about what was happening, that still doesn't qualify, that wouldn't objectively be viewed as qualifying as bank fraud, and I understand your argument as to why that's an overly stingy view. I read a second conclusion, which is that it wasn't objectively reasonable on the basis of the tidbits of evidence that Mr. Schaffer had for him to believe the theory that he put forward as to what was happening, and so it's not a legal analysis of whether that could qualify as reasonably be viewed as bank fraud. It's whether he could reasonably have the theory of what was happening. Am I right that that was kind of an alternate holding, and if so, what's your answer to that? Sure. Thank you, Your Honor. So my view on that is I do think that the overlay that the ALJ in particular, and the ARB, I think, adopted brought to this was looking for affirmative misrepresentations rather than accepting that the scheme that Mr. Schaffer and Mr. Bermeo reported could have been an artifice or a scheme to defraud the bank. And so then I think that turning to your specific question, were the tidbits of evidence, was that a factual analysis that even assuming an artifice, I don't think the ARB or the ALJ actually put this information into the correct framework. So I agree with Your Honor that there was some analysis of the different components of the scheme that Mr. Schaffer and Mr. Bermeo were reporting, but I just think that because the ARB and the ALJ came at it from a different perspective, from looking for affirmative misrepresentations. I think I misunderstood something you said. You said that they ignored that it might require or might involve a scheme or artifice? Is that what you said? Perhaps I misspoke. I think that they were looking for misrepresentations, like affirmative statements of misrepresentation, rather than acknowledging or accepting that the scope of fraud is very broad and the scope of surveillance misrepresentation. I mean, there's a false statement, misrepresentation, but a misrepresentation can encompass an omission, can encompass a half-truth. So when you say to me that they focused on a misrepresentation, what else is there with respect to a theory of fraud under 1344, wire fraud or mail fraud? Let me be more specific then, Your Honor. I apologize. I believe that the ALJ and the ARB were looking for affirmative statements of fraud rather than concealment or omissions. And I think as one example of that, when you look at the treatment of change order 16, I think that both the ARB and the ALJ said, well, look, change order 16 was rejected ultimately. And so at that point, there couldn't have been an issue, right? Because there was no change order proceeding. There was no $40,000 repair on a $9,000 job. But that's exactly the point. And you see cases like Gladich that show that if somebody reports and then the issue is recognized and resolved, the fraudulent actors recognize the issue and try to avoid it, that doesn't obviate the report. That doesn't obviate the fraud. The problem is the scheme, not its actual completion. But I thought the agency went a little bit further. It wasn't that, oh, now with the benefit of hindsight, we realized that maybe that theory wasn't well-founded. And I kind of viewed it as a finding that at the time he was making the reports that he's describing as protected activity, the essential components of his theory had already been rebutted by evidence on the ground. So, for example, I think, if I'm remembering right, that the agency sort of rejected the notion inflated bids wasn't really part of the reports. The inflated bids is sort of part of the overarching theory that we're talking about now. But it was really kickbacks for stripping the copper wire. And at the time of the April 6th email, there was already evidence that you personally signed the order saying to take everything out of this room except for what the bank decides to keep. And so it sort of nullified that theory. Why isn't that, I mean, we're reviewing that for clear error, I'm assuming. Again, Your Honor, we are really focusing on what we believe is the legal error in the framework that was applied. I definitely understand the clear error analysis applied to a factual finding. We're instead looking at the fact that the ALJ and the ARB really looked at this through the framework of, you're right, was there a statement of affirmative misrepresentation, not looking at a broader scheme of concealment, affirmative statement of misrepresentation. So what about the subjective belief problem? In other words, as I understand it, and this is a little bit of a follow-up to Judge Robinson's question, the ALJ concluded, the ARB affirmed this, found that they didn't actually subjectively believe that they were reporting bank fraud. They may have subjectively believed that they were reporting something else, but not bank fraud. Is that, a couple questions, that's a factual finding, I think, and is that a factual finding, subject to clear error, or is that something else? I think that that's a mixed finding, Your Honor. A mixed finding of fact and law, Your Honor. And the reason that I say that is because the ALJ and the ARB, I think, did find that Mr. Bermeo and Mr. Schaefer might have believed they were reporting something wrong, something more akin to the stealing of pens from the bank than a scheme or artifice of fraud. But again, that, I think, comes back to our primary point, which is because the ALJ and the ARB did not believe that they were reporting bank fraud, rather than the artifice and scheme that we think they did attempt to report. One of the things that they point out is that the words bank fraud never come together in any submission made by either of the plaintiffs. I mean, I think that then, particularly focusing on the subjective crime, Your Honor, you look at who the reporters are. And what you have is Mr. Bermeo, who started in NYCB's maintenance department and worked his way up through NYCB over time, but no legal experience. I think that to hold him to the standard of actually reporting something that he would term as an illegal salvage kickback scheme, bid rigging relating to a bank fraud, is a high burden to hold him to. And again, Mr. Schaefer came up in the accounting department, but again, no real legal training or anything like that. So to look for specific words as opposed to specific concepts in their reporting. So you've reserved three minutes for rebuttal. We'll hear from the Department of Labor and thereafter from counsel from the New York Community Bank Court. Thank you very much. Thank you, Your Honors. Good morning. May it please the Court. My name is Judith Marblestone and I represent Respondent U.S. Department of Labor Administrative Review Board. The ARB's fact-bound decision below, as you acknowledged, should be affirmed because it is supported by substantial evidence and in accordance with the law. Under the deferential standard of review that applies in this appeal, substantial evidence supports the ALJ's findings affirmed by the ARB that at the time complainants made their SOX whistleblower reports, neither of them subjectively believed that they were reporting bank fraud and such a belief would not have been objectively reasonable. And either of these fact-bound decisions alone is a sufficient basis for affirming the ARB's decision. I think the argument is that, yeah, that sounds like a fact-finding, but when you get into the weeds of this finding that they didn't have a subjective belief that you're reporting bank fraud, it's infused with the ALJ's and then the Board's understanding that in order to have a subjective belief that they're reporting bank fraud, they need to be reporting something that involves misrepresentations rather than just taking stuff away. And so the Board's arguably overly stingy view of what it would mean to subjectively believe you were reporting bank fraud informed the finding as to whether they subjectively believed they were reporting bank fraud. I don't know if that's a fair characterization, but that's sort of how I understood the argument. That is Petitioner's argument, but it's not a fair argument. The ARB had the fact findings, which were very clear that the ARB affirmed the ALJ's finding that complainants after the fact assertions that there was bid rigging, insider kickbacks, false scopes of work, or some sort of unauthorized cash for copper salvage was wholly unsupported on the facts before the ALJ. And the ARB reasonably found that substantial evidence in the record supported that finding. For example, the ALJ made express adverse credibility findings about the two complainants and didn't believe much of their version of events. The ALJ reached this decision after a 10-day virtual hearing where they listened to testimony and cross-examination of 13 witnesses and dozens of exhibits. And based on their careful consideration of the record, they appropriately weighed the evidence, made these adverse credibility findings, relied on testimony that was believable and that contradicted the complainant's version that there was some sort of that the discussion of bank fraud requiring, you know, that bank fraud could not be some sort of kickback scheme as a matter of law, infused their factual findings. These were factual findings. And the ALJ properly affirmed by the ARB. What was the finding? So is the finding that they didn't believe that there was a kickback scheme? Correct. That they did not actually believe when Schaefer made his April 6 email and when Bermeo had his April 3rd conversation, the only two protected activities at issue here and properly considered in all the factual circumstances. But at that time when they made those reports, they did not actually believe that they reported anything more than possible mismanagement, unethical behavior, perhaps a violation of a bank rule, all categories of violations that are not tethered to the six specific SOX enumerated provisions, bank fraud being the only one at issue here. And I was just going to say in terms of bank fraud, it was wholly appropriate for the ALJ and ARB applying the correct legal standard for SOX protected activity to consider whether complainants had shown any evidence of a misrepresentation or a concealment. The ALJ and ARB did consider whether there was some sort of concealment. For example, they said that Grasso, who the court found moderately credible and testified consistently that the change order had been rejected, that these alleged envelopes of cash were in the open and many employees knew about them. So there was no effort to conceal that. So substantial evidence supports the ALJ's finding affirmed by the ARB that no credible evidence, no actual findings support complainants after the fact allegations that they believed they were reporting a scheme involving insider kickbacks, bid rigging, or unauthorized copper salvage for cash. And the ALJ and ARB considered these arguments, rejected them, found that at most Schaefer may have fabricated much of the April 6 email in terms of what he reported based on the credible testimony of Chudlinski, who Schaefer admitted was in the best position to know how much wire there was. Complainants authorized the removal of that wire. And that's what happened. What is the theory of what you're saying? Why make all this stuff up? Why have this email? Why complain in this context? If you look at what the ALJ found, the credibility findings, which are not clearly erroneous because they were based on contradictory testimony and documentary evidence, all it says is that Coran received an envelope of cash. The cash was for salvage of Mongo, which was common in the construction industry and specifically authorized by the vendor Aptel's purchase order that complainants had approved. And that Coran gave the envelope to TMG. So while there might have been something untoward, as the ALJ found, neither of the reports constituted bank fraud, let alone any sort of fraud. There was no reasonable belief subjectively or objectively that those reports constituted bank fraud. They dealt with something untoward or unsavory, perhaps. Thank you very much. Thank you. We'll hear from Kate Riley. Good morning, Your Honors. My name is Kate Riley, and may it please the court, I represent New York Community Bank Corp. So the issue before the court today is whether after a 10-day evidentiary hearing involving multiple witnesses and dozens of exhibits, there was substantial evidence supporting the ALJ and ARB's conclusion that complainants were not engaged in protected activity under SOX because they lacked a subjective and objective reasonable belief that bank fraud was or could be occurring. And there are a couple things I think is important to come back to in terms of the factual findings and credibility analysis of the ALJ and the ARB. First, appellants have admitted that they do not contest the factual findings in this appeal, which they said at the reply brief at page 1. They also, in their papers, do not challenge the significant credibility findings made by the ALJ. Their case was largely based and substantially based on their own testimony, which the ALJ found to be largely not credible. And the ALJ and the ARB found that the underlying chronology of events did not support any belief that fraud was afoot here, especially when placed against what complainants actually said in April of 2017. And so, your honors, I think it's important to go back to what Schaefer actually said in his April 6, 2017 email, which is in the record at SA22 or at A222. There's nothing in this email about false pretenses or misrepresentations or allegations of false scopes of work or concepts of kickbacks or bid rigging. It was primarily about a confusion regarding the exchange of an envelope that had been received by Karin and had given back to TMJ. I want to push back on that a little bit. I mean, it wasn't, it strikes maybe it's because I'm not part of that industry. It strikes me that envelopes of cash kind of by itself raises some questions. And you combine envelopes of cash with the belief, potentially rebutted by subsequent evidence, we'll say rebutted by subsequent evidence, but the belief that significant quantities of materiel, of copper wire and whatnot, had been removed, and then you've got an envelope of cash. Don't those two facts alone, which I think he did subjectively believe, I don't think there's a finding that he didn't believe those two facts, don't those get you pretty far down the path towards reasonable, even if wrong, belief that fraud of some sort is afoot? Your Honor, I think when you look at the chronology events that led up to the April 6th email, which is that by April 6th, Mr. Schaffer had been reminded of the fact that he had signed the PO order that explicitly said, please remove the copper wiring and the banquets to remove materials from it, as well as the ceiling tiles. And he was aware of the fact, though he tried to deny it during his testimony under cross-examination at the hearing, that change order 16 had been rejected because that work was not necessary. It wasn't an allegation that there was something wrong with that change order 16, or it was somehow hiding the fact that $40,000 was going to go partly to the bank and partly to somebody else. And there was no allegation that there was something wrong with that purchase order that had been signed in September. So, Your Honor, even though envelopes of cash might seem like there's something inappropriate in this particular instance, if you look at what he actually said, what he said in his email to Juan is that the vendor didn't even know about the envelope or the job that generated the envelope, but that Curran returned it to the vendor. And so from that standpoint, there's, one, a question as to who the cash belonged to, which really seems to be what he's reporting to Juan. But a second piece of this, Your Honor, is that there is testimony in the record, including from the vendor for Aptel, that there is a sort of commonplace practice in this industry, which is that if there is scrap metal or scrap property associated with a construction project and you sell it, there may be cash value that's associated with that that could go back to the vendor. Potentially it could go back to the employees. But there's actually a question here as to whether or not scrap metal is even property of the bank in the first instance. We have to remember that the context in which this occurred is that it was a construction project. There were materials being taken out. We're talking about subjective belief and reasonable belief, so skip this argument. Yes, Your Honor. And so I think the other thing that's important here to look at is what Mr. Bermeo actually reported and forms the basis of what he says was his reported activity on April 3rd when he spoke to his supervisor, Mr. Curran, which appears at A31 and A40 of the joint appendix. And in that conversation, Bermeo didn't reference anything about fraud, and he didn't even mention by his own testimony that he believed material had been taken from the land room or that copper wire was missing. And so when the ALJ found that he didn't speak enough to what exactly was the basis for his belief that there was any sort of fraudulent scheme or omission or misrepresentation or false pretenses, that was based on Mr. Bermeo's own testimony that came out at the course of the hearing. I see that my time is up, Your Honor, so I will step away unless there's any other questions. Your Honors, I'd just like to tick through a couple of things that came up during my colleague's presentations, although if you have any questions, please feel free to interrupt me. First, I think that the Department of Labor's perspective, again, comes at this from the reverse of what we are saying is the error. You heard the Department of Labor start with all of the factual findings. Excuse me. With which you don't disagree. We are not taking issue with the factual findings before this court, Your Honor. We understand the standard of review before this court. Again, we are saying that these factual findings were made in the wrong legal context. We believe that that is the fundamental error here. The ultimate determination that they didn't subjectively believe, that Schaefer didn't subjectively believe he was reporting a bank fraud, is that a factual finding that you're not contesting, or are you treating that as a legal conclusion? We are treating that as a mixed legal conclusion. We're not arguing with the ALJ's credibility findings, for example, before this court. We do think that because the ALJ still was coming at this from the wrong perspective and looking for an affirmative misstatement of fact, as opposed to looking for a scheme of concealment, that the ALJ and the ARB sort of misunderstood or misframed. I'm not sure that I understand just analytically. Even if we were to agree with you, if the determination, there's a factual finding that they did not subjectively believe that anyone was engaging in bank fraud, regardless actually of how I think you view what constitutes bank fraud, that is a factual finding that seems to deal with the subjective belief problem. I don't understand the legal part of that. If I'm complaining about something and I complain about mail fraud, but it's decidedly not bank fraud, even if I'm wrong about that, then isn't that the end of the story with respect to the subjective belief problem? I don't understand how you can parse that out into a mixed question of law and fact. Because, Your Honor, if the ALJ and the ARB misunderstood the parameters of what could constitute a bank fraud and then said... That goes to the reasonable belief problem, not the subjective belief problem. Who cares what the parameters of any fraud or any misconduct might be? If I don't believe that something is bank fraud, isn't that the end of the subjective belief inquiry? I don't believe so in this case, Your Honor. Again, the ALJ and the ARB did not find that Mr. Schaefer and Mr. Brumeau did not think that they were reporting anything wrong. In fact, I started this argument with a quote from page A350 from the record, which is from the ALJ's decision, saying, the complainants might well have thought that something was amiss, that they were reporting something wrong. The ALJ just didn't find that they believed that they were reporting bank fraud. But again, we believe that was based on the ALJ's restrictive determination of what a bank fraud could be in this context. And to go to Your Honor's point just very briefly, there were circumstances that were very suspicious. We're not just talking about envelopes of cash passing among the contractors who might have salvaged some sort of scrap. We're talking about envelopes of cash going to NYCB employees, right? Mr. Curran, a supervisor in the CRES unit, had one of those envelopes of cash. So again, given that... That was puzzling, because he had the envelope of cash, but he returned it, right? And that's right there in the April 6th communication. So it's not that, hey, I have knowledge that an employee of this company has gotten an envelope of cash. It's that he came into it, wondered what to do, didn't know where it came from, and returned it to the vendor. I mean, that doesn't, that seems upstanding, not fraudulent. Well, again, though, it's an oddity that somebody at the vendor thought somebody at NYCB was supposed to be getting cash. And again, I would point Your Honor to the Gladish case, where the fact that the fraud is not consummated, or Loschinsky as well, the fact that the fraud is not consummated in a specific instance doesn't mean that the report itself is improper in some way. Thank you very much.